**23SL-CC00251**

### IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY
### STATE OF MISSOURI

| | |
|---|---|
| EMILY QIAN YANG, *individually and on behalf of all others similarly situated,* | ) ) ) ) Case No. _____ |
| Plaintiffs, | ) ) |
| v. | ) **JURY TRIAL DEMANDED** ) |
| THE PROCTER & GAMBLE COMPANY, and DOES 1 through 10, | ) ) ) ) |
| Defendants. | ) |

### CLASS ACTION PETITION

Plaintiff Emily Qian Yang, individually and on behalf of all others similarly situated, hereby files this, her Class Action Petition, against Defendant The Procter & Gamble Company (collectively "P&G" or "Defendant"), and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

1. Defendant markets and sells consumer products, including "Gain"-branded liquid laundry detergent, packaged in 154 fl. oz. containers, and purporting to be sufficient for 107 loads of laundry (the "Product").

2. Indeed, the claim "107 LOADS" appears prominently on the front of the Product, as shown below (magnified for clarification):

1



a.



b.

3.      Although the claim "107 LOADS" is obvious to the purchasing consumer, a not-so-obvious, small, diamond-shaped mark follows the word "LOADS."

4.      The diamond-shaped mark is not a footnote, nor an asterisk; it is not something a reasonable consumer would readily identify as being a reference mark of any sort. In other words, in-and-of-itself, the diamond-shaped mark does not compel further investigation.

5.      Nonetheless, the diamond-shaped mark apparently is meant to correspond to fine-print on the backside of the container, which itself is covered in fine-print of varying sizes, all of which is

2

difficult to read:



a.

6. Amongst the fine-print on the rear of the container is an obscure notation beginning with the same diamond-shaped-mark from the other side:

a.

7. The diamond-shaped-mark precedes the statement: "Contains approximately 107 loads *as measured to just below bar 2 on the cap*." (emphasis added).

8. "Bar 2 on the cap," is itself a reference to a diagram preceding the statement, which appears as follows:

3



a.

9. Putting this all together – to the extent a consumer can follow the textual "clues" riddled across the Product's container – the amount of detergent in the container is only sufficient for "107 LOADS" if a "load" is a so-called "medium" load, which is *less than* half a full load (with "Bar 5" signifying a "Full load").

10. Consequently, for the vast majority of consumers doing full loads of laundry at high efficiency ("he"), the most loads the Product provides detergent for is approximately half-as-many, or roughly just approximately 50 loads, or less.

11. In any and all instances, the Product provides detergent for nowhere close to 107 loads, and more likely provides detergent for roughly half that amount of loads.

12. Representing that the Product can provide "107 LOADS," when "loads" are half or less the size of what a consumer (and Defendant) consider a "full" load, is misleading and deceptive.

13. Pursuant to the MMPA, such practice is illegal.

14. In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Product provides for "107 Loads." That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

### I.   PARTIES, JURISDICTION, AND VENUE

15. Plaintiff Emily Qian Yang is a citizen and resident of St. Louis County, Missouri.

16. Plaintiff brings this Class Action Complaint individually and on behalf of a putative class of Missouri residents, and/or a putative subclass of consumers from certain states, the "Consumer

Protection Subclass."

17. Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business at Procter & Gamble Plaza, Cincinnati, Ohio 45202.

18. The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

19. Defendants, directly and through their agents, have substantial contacts with, and receive substantial benefits and income from and through the State of Missouri. Defendants are the owners, manufacturers, and distributors of the Products, and the entities that created and/or authorized the false, misleading, and deceptive packaging of the Products.

20. Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

21. This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

22. <u>Class definitions</u>: Plaintiff brings this action on behalf of herself and a class of similarly-situated persons preliminarily-[1]defined as follows: All persons who purchased the Products[2] during the

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.

5

Class Period while in one of the specific states having consumer protection statutes materially-identical to the MMPA: Illinois, Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut ("Consumer Protection States"). In addition, and/or alternatively, Plaintiff brings this action on behalf of herself and a Missouri subclass of similarly-situated persons defined as follows: All persons, who, within the Class Period, purchased the Products in the State of Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

23.     Numerosity: Upon information and belief, the Class and Subclass includes at least tens-of-thousands of individuals on a multiple-state basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

---

Included within this reservation is a potential subclass of those citizens in those states having consumer protection laws materially-similar to the MMPA: Illinois, Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut ("Consumer Protection Subclass"). Each state therein has a consumer protection statute that broadly prohibits deceptive conduct; likewise, no state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Thus, Defendant's conduct alleged herein violates each statute's shared prohibitions.

[2] As that term and label is defined herein.

24. <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

25. <u>Adequacy</u>: Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

26. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

27. <u>Superiority</u>: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

## PLAINTIFF'S CLAIMS

28. For all the aforementioned reasons, the Product's "107 LOADS" statement is false, misleading and deceptive, all in violation of the Missouri Merchandising Practice Act, and various other Missouri and similar-state consumer laws.

29. Average and reasonable consumers such as Plaintiff generally do not read the fine print on the rear of a package when purchasing a Product.

30. Plaintiff and other consumers purchased the Products due to their belief that the Product would provide enough detergent for approximately 107 loads of laundry.

31. Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that that Products provide "107 LOADS."

32. Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels in this respect.

33. Plaintiff and the Class would not have purchased the Products had they known that the Products do not provide anywhere close to 107 full loads.

34. Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

35. There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual amount of the Product being purchased by consumers, while simultaneously providing Defendant with a financial windfall.

### *Allegations Relating to All Plaintiffs*

36. As noted, *supra,* since the initial offering of the Products, the containers on the front packaging of all of the Products has borne one or more uniformly-worded labels falsely claiming the Product provides enough detergent for "107 LOADS" (hereinafter "False Claims").

37. In reality, for all the reasons set forth *supra,* a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

38. Defendant, as developer, manufacturer, and exclusive seller and distributor of the

8

Products, has been aware since the Products' inception, that the False Claims are in fact false.

39. Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

40. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a Product that would be enough for 107 loads of laundry.

41. Plaintiff and the class members purchased the Products without being aware that the Products do not, in fact, provide enough detergent for anywhere near 107 loads of laundry.

42. Defendant possessed specialized knowledge regarding the data and information concerning the amount of the Products and its claims.

43. In fact, in regard to the False Claims, the Product is a credence good because its purported "107 LOADS" label cannot be independently verified by the consumer at the time of purchase.

44. In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

45. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

46. If, at some point in the future, the Product was improved to provide for "107 LOADS" and/or otherwise be accurately labeled, Plaintiffs might then purchase the Products again.

47. As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

48. By marketing, selling and distributing the Product to purchasers in Missouri and elsewhere, Defendant made actionable statements that the Products provided for "107 LOADS."

9

49. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

50. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

51. As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the amount of Product which the Plaintiff and the class members could not and did not review.

*Facts Particular to Plaintiff Emily Qian Yang*

52. In or around December of 2022, Plaintiff purchased the Product from a third-party retailer, Walmart, while in Missouri.

53. Due to the claims on the packaging, Plaintiff falsely believed she was purchasing a product that would provide enough detergent for 107 full loads of laundry.

54. Plaintiff thereafter purchased the Product. Plaintiff purchased the Product primarily for her personal, family and household use.

55. At the time Plaintiff purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

56. Plaintiff discovered that such claims were false shortly after purchasing and using the Product.

57. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, Plaintiff would not have bought the Product.

58. When Plaintiff purchased the Product, Plaintiff was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

59. Specifically, Plaintiff suffered an ascertainable loss because Plaintiff did not receive the

10

expected benefit of the bargain.

60. When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that Plaintiff was receiving a product that provided for 107 loads of laundry.

61. The Product was not what it was purported to be. Plaintiff did not receive the value of what Plaintiff bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised benefit – the usable amount of Product.

62. Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that provided enough detergent for "107 loads" and the actual value of the Products. Said difference for most Plaintiffs would therefore be a percentage of the price paid for the Product.

63. Plaintiff would purchase the Products again if they were honestly-labeled in respect to the amount of full loads, but faces an imminent threat of harm because she will not be able to rely on Defendant's labels in the future (without relief) and will thus be unable to purchase the Products.

64. Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members purchased the Products at a time within the Class Period while in Missouri and/or one of the Consumer Protection States.

## **CAUSES OF ACTION**

## **COUNTS RELATING TO THE MISSOURI AND CONSUMER PROTECTION SUBCLASSES**
## **COUNT ONE: BREACH OF WARRANTY**

65. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

66. Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product.

67. Defendant made promises and representations in an express warranty provided to all

11

consumers, namely the False Claims.

68. The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

69. Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

70. Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law and the laws of the Consumer Protection States.

71. Defendant breached the warranty because the False Claims were false.

72. The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

73. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

74. Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

75. Specifically, on January 5, 2023, counsel for Plaintiff provided written NOTICE of Defendant's breach of express warranty to Defendant. Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranty.

76. In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, inter alia, Defendant's testing and knowledge of the Product.

77. Defendant has nonetheless refused to remedy such breaches.

78. By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

79. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

**COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW**

80. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

81. By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

82. By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

83. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

84. As a result of that breach, Plaintiff and each class member suffered damages.

**COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW**

85. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

86. Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

87. Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

88. Defendant either knew or should have known that the payments rendered by

**COUNT FOUR: VIOLATION OF THE MMPA & OTHER CONSUMER PROTECTION LAWS**

89. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each

13

preceding paragraph of this Petition, as though fully set forth herein.

90.     Defendant's acts complained of herein occurred in and emanated from the State of Missouri and/or one of the Consumer Protection States.

91.     Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

92.     As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

93.     As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing would provide enough for 107 loads of laundry.

94.     Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.

95.     Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

96.     Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

97.     For all of the same reasons set forth above, Defendants' conduct also violates the materially-similar consumer protection laws of the Consumer Protection Subclass:

       a. Illinois: 815 ILCS § 501/1, *et. seq.*

       b. Maryland: Md. Code Ann. Com. Law, § 13-301, *et. seq.*

       c. Hawaii: Haw. Rev. Stat. § 480-2, *et. seq.*

       d. New York: N.Y. Gen. Bus. Law § 349, *et. seq.*

       e. Washington D.C.: D.C. Code § 28-3901, *et. seq.*

       f. Rhode Island: R.I. Gen. Laws § 6-13..1- 5.2(B), *et. seq.*

      g. Vermont: 9 V.S.A. § 2451, *et. seq.*

      h. Washington: Wash. Rev. Code § 19.86.010, *et. seq.*

      i. Connecticut: Conn. Gen. Stat. Ann. §§ 42-110, *et. seq.*

("Consumer Protection Statutes")

98. Accordingly, just as the MMPA has been violated by Defendant as alleged herein, each of the above Consumer Protection Statutes, all materially-similar to the MMPA, have also been violated by Defendants.

99. Each of these Statutes is materially similar to the MMPA. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendant's conduct violates each statute's shared prohibitions.

100. Each of the Consumer Protection Statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers. Defendant's conduct violates each statute's prohibitions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for an order certifying this action as a Nationwide Class, Consumer Protection Subclass and/or Missouri Subclass class action, and appointing Plaintiff Emily Qian Yang as Class and/or Subclass representative and her counsel as class and/or subclass counsel. Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned nationwide common law claims; and/or violated the MMPA and/or the Consumer Protection Statutes, and award Plaintiffs compensatory damages, restitution, punitive damages, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*